USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/8/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AHLIJAH BRYANT, individually and on behalf of all others similarly situated, *ET AL.*,

Plaintiffs,

-against-

CITY OF NEW YORK, *ET AL.*,

Defendants.

---

14-Cv-8672 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

The question for resolution by this Court is whether a recent amendment to the New York City Board of Correction's rules concerning the use of punitive segregation for pretrial detainees renders this litigation moot, therefore requiring that it be dismissed for lack of federal subject matter jurisdiction. The Court concludes that defendants have met the "heavy burden" of showing that "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)) (internal quotation marks omitted). For that reason, the Court finds that the amendment does moot the action and therefore grants defendants' motion to dismiss the complaint.

## I. BACKGROUND

New York City places its pretrial detainees in solitary confinement—also known as punitive segregation or PSEG—as punishment for a variety of infractions committed during the time the detainee is in jail. (Compl. ¶¶ 5-7.) Until recently, the city allowed pretrial detainees to be placed in solitary confinement solely on the ground that they "owed" old PSEG time. (Compl. ¶ 35.) That old-time debt existed whenever a pretrial detainee was released from pretrial detention—for instance, if she was released on bail—without having served the full amount of her time in punitive segregation. If she

returned to jail even years later for an entirely different crime, the city placed her in punitive segregation solely on the ground that her prior PSEG sentence—denominated her "old time"—remained outstanding. (*See* Compl. ¶¶ 54-55.)

Plaintiffs commenced this civil rights putative class action in October of 2014 to challenge defendants' old time policy. (Compl. ¶ 2.) The individual plaintiffs were detainees in city jails who had been confined in punitive segregation to serve old time. (Compl. ¶ 14.) Plaintiffs sought monetary damages as well as declaratory and injunctive relief. Defendants were the city as well as current and former New York City Department of Correction ("DOC") Commissioners and Chiefs of Department. (Compl. ¶¶ 15-20.) The complaint charged that defendants' old time policy violated the substantive and procedural due process guarantees of the Fourteenth Amendment. (Compl. ¶¶ 6-7.)

Approximately two months after this action commenced, Mayor Bill de Blasio and Commissioner of Correction Joseph Ponte jointly announced that the system of old time was going to end, and that no inmate was "going to owe time anymore." (Ex. B. to Decl. of Martin Bowe dated April 19, 2016 at 8, Dkt. No. 72.) All "historic time," they announced, will be "wipe[d] . . . off the books." (*Id.*) Two days after that announcement, the New York City Board of Correction proposed new rules concerning solitary confinement that, *inter alia*, prohibited detainees from being placed into PSEG based on old time alone. (Bowe Decl. ¶ 4.) The board approved these rules in mid-January 2015. (Bowe Decl. ¶ 4.)

As approved, the new rule clearly and specifically prohibits the use of punitive segregation on the basis of old time. It states: "[P]unitive segregation is intended to address a particular offense committed in the course of an inmate's incarceration and should not be imposed in connection with an offense committed by the same inmate during a separate and previous incarceration." New York City, N.Y., Rules, Tit. 40 § 1-17(a). The rule goes on to provide as follows: "As of the effective date of this section[, February 20, 2015], no inmate shall be assigned to or held in punitive segregation for any time from a separate and previous incarceration for which such inmate was sentenced to but did not serve in punitive segregation." New York City, N.Y., Rules, Tit. 40 § 1-17(g) (see Historical Note for effective date).

2

DOC's Chief of Facilities Operations Hazel Jennings and Corrections Officer Sheila Owens filed declarations in support of defendants' motion. Jennings states that the new rule was "aggressively" implemented within one month of its effective date. (Decl. of Hazel Jennings dated May 16, 2016 ¶ 8; *see* Decl. of Sheila Owens dated April 19, 2016 ¶¶ 4-5.) Owens, who is charged with overseeing detainee admissions into PSEG and maintaining PSEG records, is responsible for expunging any old time that was on the books for any current detainee or any new detainee. (Owens Decl. ¶ 6.)[1]

Owens and Jennings report that since the department implemented the new rule by March of 2015, only one detainee has been placed—mistakenly—in PSEG solely on the basis of old time. (Owens Decl. ¶ 7; Jennings Decl. ¶ 4.) Jennings states that this single error resulted from the department's failure to implement the new rule for that inmate's facility—a women's jail—because few inmates are sentenced to PSEG from that institution. (Jennings Decl. ¶ 4.) According to Jennings, that error has since been corrected. (Jennings Decl. ¶ 4.)[2]

Both Jennings and Owens—the people primarily charged with implementing the new rule—state that the department is "committed to the [n]ew [r]ule and its diligent implementation," (Owens Decl. ¶ 11; Jennings Decl. ¶ 9.)

Shortly after the new rule's approval, this Court stayed the litigation at the request of the parties pending global settlement discussions. (Order dated Jan. 21, 2015, Dkt. No. 31.) By the end of 2015, the parties had resolved each individual plaintiff's claim for monetary damages, (Stipulations and Orders of Partial Settlement and Discontinuance, Dkt. Nos. 52, 54-55, 57-63), but not plaintiffs' claim for injunctive relief. The Court appointed a mediator, Professor Brett Dignam of Columbia Law School, to assist in resolving the injunctive portion of this litigation, (Order dated Oct. 23, 2015, Dkt. No. 51),

---

[1] DOC is apparently not given to rushing headlong into automation: Owens performs the expungement manually, under the supervision of Jennings and Chief Turhan Gumusdere. (Jennings Decl. ¶¶ 3-6; Owens Decl. ¶ 9.)

[2] In addition, four inmates mistakenly served time in punitive segregation during the first month the new policy went into effect while it was being implemented. (Owens Suppl. Decl. ¶ 5; Jennings Decl. ¶ 8.) None of those errors suggest that the old time policy continues today.

3

but mediation failed.³ Defendants then filed this motion pursuant to Fed. R. Civ. P. 12(b)(1) seeking dismissal of the action on the ground that this Court lacks subject matter jurisdiction because the action is moot.

## II. DISCUSSION

Article III of the United States Constitution prohibits courts from adjudicating cases or controversies that have become moot. *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). A case is often deemed moot when the conduct a plaintiff challenges ceases to exist. *See, e.g., Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377 (2d Cir. 2004); *Armstrong v. Ward*, 529 F.2d 1132, 1135-36 (2d Cir. 1976); *Marin v. Town of Southeast*, 136 F. Supp. 3d 548, 561-63 (S.D.N.Y. 2015). The decision of whether a case should be dismissed as moot is entrusted to "the sound discretion of the district court." *Harris & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992); *Davis v. City of N.Y.*, 812 F. Supp. 2d 333, 339 (S.D.N.Y. 2011); *Rivers v. Doar*, 638 F. Supp. 2d 333, 337 (E.D.N.Y. 2009).⁴

Nonetheless, a defendant cannot unilaterally strip a federal court of its jurisdiction merely by ceasing a challenged practice. *Friends of the Earth*, 528 U.S. at 189. If a defendant could do that, "the courts would be compelled to leave the defendant free to return to his old ways." *Id.* (internal quotation marks and alterations omitted). Consequently, a defendant's voluntary cessation of challenged conduct moots an action only "'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203). If defendants can meet the "heavy burden" of showing that is so, the action may be dismissed as moot. *Id.*; *see also County of L.A. v. Davis*, 440 U.S. 625, 631 (1979).

---

³ The Court extends its appreciation to Professor Dignam for the efforts she undertook, pro bono, at the Court's request to resolve this litigation.

⁴ The parties agree that this Court may look beyond the pleadings in evaluating defendants' motion. *See, e.g., State Emps. Bargaining Agent v. Rowland*, 494 F.3d 78, 77 n.4 (2d Cir. 2007); *Horwitz v. Loop Capital Mkts. LLC*, 15-cv-1253, 2016 WL 727211, at *1 (S.D.N.Y. Feb. 19, 2016). The Court has therefore considered the documentary evidence that each side has submitted in connection with this motion.

The tripartite test for determining when voluntary cessation of conduct moots the controversy was most recently set forth in *American Freedom Defense Initiative v. Metropolitan Transportation Authority*, 815 F.3d 105 (2d Cir. 2016). First, defendants' conduct must have "in fact, ceased." *Id.* at 109. Second, there must be "no reasonable expectation that the alleged violation will recur." *Id.* (internal quotation marks omitted). Finally, defendants must show that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal quotation marks omitted). Defendants' burden is "heavy," *id.* at 110, especially because "exceptions to mootness" such as the voluntary cessation doctrine "are particularly applicable in class action cases in the . . . civil rights arena." *Jobie O. v. Spitzer*, No. 03-cv-8831, 2007 WL 4302921, at *13 (S.D.N.Y. Dec. 5, 2007). Despite that "general proposition," the mootness inquiry is "intensely factual." *Id.*

As noted above, the Court finds that defendants have met their burden.

### A. The old time policy has "in fact, ceased."

First, defendants have demonstrated to the Court's satisfaction that the old time policy has, "in fact, ceased." *See Am. Freedom Def. Initiative*, 815 F.3d at 109. The new rule disbanding the old policy was instituted after the city gave formal notice of the proposed change, provided the public an opportunity to comment, and held a public hearing, (Bowe Decl. ¶ 4). In addition, the Mayor and Commissioner of Correction publicized the policy change instituted by the new rule, (Ex. B to Bowe Decl. at 8.) *See Rivers*, 638 F. Supp. 2d at 338. Further, the DOC employees charged with the rule's execution—Owens and Jennings—have filed affidavits which set forth in detail the process by which old time is expunged on a daily basis "for any inmate being placed into PSEG and for any incoming inmates," (Owens Decl. ¶ 10.) In fact, they report that the "expungement process is a prerequisite to placement into PSEG for all inmates in DOC custody, as well as for every single inmate coming into DOC custody after arrest." (Jennings Decl. ¶ 5; *see* Owens Decl. ¶ 8.)

The evidence supports Owens and Jennings' conclusion that the new rule has been fully implemented and that old time can no longer be the sole basis for placing a detainee in punitive segregation. Indeed, defendants' witnesses have satisfactorily explained that the single detainee who was placed in PSEG on the basis of old time alone after March of 2015 was mistakenly placed there because her institution had, in error, not been integrated into the new

5

procedures. (Jennings Decl. ¶ 4.) The evidence is uncontested that that error was immediately remedied. (Jennings Decl. ¶ 4.) The four additional detainees who improperly served PSEG did so during the first month of the new policy, when it was just being implemented.

Plaintiffs urge this Court to reject Owens' and Jennings' specific and factually supported representations because Owens and Jennings allegedly lack personal knowledge that the challenged policy has ceased. Contrary to plaintiffs' contentions, Owens and Jennings are arguably *best* able to comment on the new rule's implementation: they are charged with that very duty. They have personal knowledge over whether the challenged old time rule has actually ceased.

The evidence in the record that plaintiffs cite for the proposition that the old time practice still operates is unpersuasive. The abovementioned error in connection with requiring a single defendant to serve old time after March of 2015 does not a policy revive. *See Inside Connect, Inc. v. Fischer*, 13-cv-1138, 2014 WL 2933221, at *9 (S.D.N.Y. June 30, 2014). Moreover, defendants' seemingly inefficient means of implementing the rule—manually expunging each inmate's old PSEG time rather than instituting an automatic computerized procedure—does not demonstrate that the old policy is still in effect. The Court concludes comfortably that New York City's pretrial detainees are no longer being placed into PSEG based on old time alone. That policy has "in fact, ceased."

## B. There is no reasonable expectation that the old time policy will recur.

Defendants have shown that there is no "reasonable expectation" that the old time policy will recur. *Lamar*, 356 F.3d at 375; *Manbeck v. Colvin*, No. 15-cv-2132, 2016 WL 29631, at *4 (S.D.N.Y. Jan. 4, 2016). Indeed, the new rule was adopted after a public hearing and comment period. (Bowe Decl. ¶ 4); New York City, N.Y., Rules, Tit. 40 § 1-17. Such rules—while not as undoable as legislation, *see Byrd v. Goord*, No. 00-cv-2135, 2007 WL 2789505, at *1 (S.D.N.Y. Sept. 26, 2007)—have often been considered sufficiently concrete as to satisfy this element of the voluntary cessation doctrine. *See, e.g., Pilgrim v. N.Y. State Dep't of Corr. Servs.*, No. 07-cv-1001, 2011 WL 6031929, at *3 (N.D.N.Y. Sept. 1, 2011); *see also Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451-52 (2d Cir. 2002) (per curiam).

6

In *Tawwab v. Metz*, 554 F.2d 22 (2d Cir. 1997) (per curiam), for instance, a panel of the U.S. Court of Appeals for the Second Circuit concluded that "an official prison document which was handed up to the Court during oral argument" embodied a change in policy and made "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 24 (quoting *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203). The rules here adopted pursuant to formal notice-and-comment procedures, New York City, N.Y., Rules, Tit. 40 § 1-17, are at least as reliable. Further, the city's substantial efforts taken to implement the rule as well as its officials' pronouncement of commitment to the new rule—made both publicly and in the context of this litigation, (*see, e.g.*, Ex. B. to Bowe Decl. at 8; Owens Decl. ¶ 11; Jennings Decl. ¶ 9)—also suggest that the city is committed to the new rule. *See Rivers*, 638 F. Supp. 2d at 338; *Inside Connect*, 2014 WL 2933221, at *8. In addition, some deference is due to a government official's statement that a challenged process has stopped and there are no plans to bring it back, especially in the absence of any evidence whatsoever that the city was disingenuous in promulgating the new rule or intends to reinstate the old one. *Lamar*, 356 F.3d at 377. Plaintiffs' arguments to the contrary are based on rank speculation.

Without any "affirmative evidence" in the record "that the challenged provision [will] be reenacted," plaintiffs cannot defeat defendants' mootness argument. *Rivers*, 638 F. Supp. 2d at 338; *accord Lamar*, 356 F.3d at 377.

### C. Defendants have "completely eliminated" the effects of the policy.

Finally, the Court is convinced that the effects of the abandoned old time policy "have been completely eliminated" and "irrevocably eradicated." *Am. Freedom Def. Initiative*, 815 F.3d at 109-10. DOC officials have stated under penalty of perjury that they are aware of only a single inmate who was placed in PSEG on the basis of old time after March of 2015. (Owens Decl. ¶ 7; Jennings Decl. ¶ 4.) Indeed, Owens provided to the Court voluminous detailed documents setting forth the old time all detainees have served from December 1, 2012, to the present day as well as the years in which that old time was served. (Exs. A & B to Suppl. Decl. of Sheila Owens dated May 16, 2016; Owens Suppl. Decl. ¶¶ 3, 5.) According to those documents, all inmates serving PSEG sentences based on old time were released shortly after the new rule's effective date, except for the few errors that occurred described above when the change was being implemented. The Court is thus confident that the effects of the old

7

time policy have been "irrevocably eradicated." *Davis*, 440 U.S. at 631. In other words: no PSEG inmates currently suffer solitary confinement based on any prior, interrupted PSEG sentences.[5]

### III. CONCLUSION

Old time is no longer used as a basis to assign detainees to punitive segregation. Defendants have ceased the very practice plaintiffs have challenged. There is no reasonable expectation that the discarded policy will recur, and defendants have eliminated the effects of the old policy. This action is therefore moot and is hereby dismissed for lack of subject matter jurisdiction.

Dated: New York, New York
July 8, 2016

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.

---

[5] The Court also denies plaintiffs' request for additional discovery. Plaintiffs have failed to explain what facts they seek are "peculiarly within the knowledge of the opposing party," *see Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986), that plaintiffs have not had access to. The parties have already engaged in substantial discovery for settlement purposes under Court supervision. (*See e.g.*, Letter to the Court from Martin Bowe dated Jan. 5, 2016, Dkt. No. 65; Letter to the Court from Martin Bowe dated Aug. 24, 2015, Dkt. No. 47; Letter to the Court from Christopher Terranova dated Aug. 19, 2015, Dkt. No. 45.) That discovery consisted both of extensive document reviews and access to DOC officials for questioning. (*See, e.g.*, Bowe Letter dated Jan. 5, 2016 at 1-2; Bowe Letter dated Aug. 24, 2015 at 2; Owens Decl. ¶ 10; Owens Suppl. Decl. ¶¶ 2-3.) Given this Court's first-hand knowledge of the substantial discovery undertaken in this action and plaintiffs' failure to articulate what more is needed, the Court exercises its discretion to deny plaintiffs' request. *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009); *see also Haber v. United States*, ___ F.3d ___, 2016 WL 2942370, at *6-7 (2d Cir. May 20, 2016);